```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


CORINTHIAN MORTGAGE CORP       )
d/b/a SOUTHBANC MORTGAGE,      )
                               )
     Plaintiff,                )
                               )
        v.                     )    1:07cv832 (JCC)
                               )
CHOICEPOINT PRECISION          )
MARKETING, LLC                 )
                               )
     Defendant.                )
```

## **M E M O R A N D U M   O P I N I O N**

` This matter is before the Court on Defendant's Motion to Dismiss. For the following reasons, this Motion will be granted in part and denied in part.

### **I. Background**

This case arises out of a contractual agreement between Plaintiff Corinthian Mortgage Corporation, doing business as SouthBanc Mortgage ("SouthBanc") and its mailing list broker, Defendant ChoicePoint Precision Marketing, LLC ("ChoicePoint"). On or about January 23, 2002, SouthBanc and ChoicePoint entered into an agreement (the "Service Agreement") wherein ChoicePoint agreed to assist in developing a methodology for creating lists of names and individuals to whom SouthBanc could mail targeted promotional materials. The parties also entered into a Confidentiality and Nondisclosure Agreement (the "Confidentiality

1

Agreement"), which was incorporated into the Service Agreement, delineating the treatment of information.  The Confidentiality Agreement designates as "Confidential Information" all material that "is clearly marked as proprietary, confidential or with other confidentiality notices when disclosed, or . .  is identified as proprietary, confidential or with other confidentiality notices on disclosure."  Am. Compl. Ex. 2, Confidentiality Agreement at ¶ 1.

  Theresa Ritter ("Ms. Ritter") was a Vice President at SouthBanc and participated in communications regarding the criteria to be used in the SouthBanc name-selection methodology being developed by ChoicePoint.  On or about June 30, 2003, SouthBanc terminated Ms. Ritter.  SouthBanc representatives met with ChoicePoint representatives to advise them of concerns that Ms. Ritter was creating a competing company, and requested that ChoicePoint not allow Ms. Ritter or a new company founded by her to use SouthBanc's criteria for selecting names.  The parties signed a Confidentiality of Information Agreement (the "COI Agreement") on August 4, 2003, in which both parties agreed "[t]o take all steps reasonably available to them to ensure that ... nonpublic personal information obtained from the other parties with respect to customers and/or business affairs" would be kept "confidential at all times."  Am. Compl. Ex. 3, COI Agreement. The COI Agreement defined confidential information as "any data

2

or information other that is known to disclosing party, is competitively sensitive, and is not generally known to the public." *Id*. The Service Agreement, Confidentiality Agreement, and COI Agreement (collectively, the "Agreements") form the written basis of the contractual relationship between the parties.

In September, 2003, Ms. Ritter formed a competing company, Summit Financial LLC ("Summit"). She requested names from ChoicePoint on behalf of Summit in late August of 2003, using name selection criteria similar to SouthBanc's. ChoicePoint provided the requested information to Summit and continued to supply names using that criteria through at least January 2005. ChoicePoint did not inform SouthBanc of, and even took actions to keep it from becoming aware of, their business relationship with Summit while continuing to process Summit's requests for names based on the criteria Ms. Ritter had obtained from SouthBanc.

On August 17, 2007, Plaintiff brought suit in the Eastern District of Virginia. It filed an amended complaint on November 28, 2007, alleging that Defendant violated the covenant of good faith and fair dealing (Count 1), violated Massachusetts' Unfair Trade Practices Act (Count 2), and breached the Contract between the parties (Count 3).

On January 11, 2008, Defendant filed a Motion to

Dismiss.  Plaintiff responded on January 29, 2008, and Defendant filed a Reply on February 5, 2008.  This Motion is currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff."  *Id.*  In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require  "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, __

U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

A. <u>Breach of Contract</u>

Defendant denies that it breached the relevant Agreement.  Although it does not deny that it worked with Summit, allowing it to use information Plaintiff claims was proprietary, Defendant argues that their interactions did not violate any of the relevant Agreements.

Plaintiff alleges that Defendant committed three major breaches of their contract.  First, Plaintiff claims that Defendant "fail[ed] to adequately investigate whether Theresa Ritter's orders on behalf of Summit utilized [Plaintiff's] proprietary criteria."  Mem. in Opp. to Def.'s Mot. to Dismiss at 7.  In addition, Plaintiff alleges that Defendant failed to tell Plaintiff of Ritter's actions and impermissibly used Plaintiff's "proprietary name selection criteria to fill orders submitted by Ritter to select names for Summit."  *Id*.

Defendant asserts that the Agreement provides that information provided by Plaintiff would belong to Defendant and would not be proprietary information belonging to Plaintiff. Therefore, Defendant argues, even if it used search criteria for the new client that was identical to that provided by Plaintiff, it would not be in breach of the Agreement.  In addition, Defendant argues that the Confidentiality Agreement required

proprietary information be so marked, and since the information in question was not marked, Plaintiff cannot now claim that it is confidential.

The parties' fundamental disagreement is as to whether the name selection criteria is proprietary information. Plaintiff believes that under the Agreement it had "a reasonable expectation that its proprietary information, and in particular, its methodology for selecting the targets of its direct mail program, would be treated as confidential by [Defendant]," and thus that it did not need to be marked "confidential" during every interaction. *Id.*  Defendant believes that its use of the search criteria in question was permissible under the Agreement, particularly because the information was not marked "confidential," and thus that its behavior did not breach the contract or misuse proprietary information.  If the name selection criteria is confidential information under the Agreements, then Plaintiff has sufficiently alleged a statement of its claims of breach of contract to meet the Rule 8 standard. Fed. R. Civ. P. 8.

The parties have agreed that Massachusetts law will govern their dealings.  That state's highest court has held that "[w]hen the words of a contract are clear they alone determine the meaning of the contract but, when a contract term is ambiguous, its import is ascertained from the parties' intent as

6

manifested by the guaranty's terms and the circumstances surrounding its creation, such as relationship of the parties, actions of the parties and established business usages." *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 723-724 (Mass. 1977)(citing *Zeo v. Loomis*, 246 Mass. 366, 368 (1923)). Defendant argues that the Agreements are not ambiguous and that Plaintiff does not cite factual claims to support its allegations of breach.  Plaintiff argues that the requirement that all confidential information be so marked can and has been modified by the conduct of the parties, noting that under Massachusetts law, "[m]utual agreement on modification of the requirement of a writing may, moreover, 'be inferred from the conduct of the parties and from the attendant circumstances' of the instant case." *First Pennsylvania Mortg. Trust v. Dorchester Sav. Bank*, 481 N.E.2d 1132, 1139 (Mass. 1985)(quoting *Flynn v. Wallace*, 270 N.E.2d 919, 922 (Mass. 1971)).

   Because the Agreements are silent as to the specific status of the name selection criteria and the parties conduct may have modified the requirement that all confidential information be so marked, the Court will find that Plaintiff has sufficiently asserted a claim which, if its understanding of the Agreement governs, may entitle it to relief on its breach of contract claim.  Therefore, dismissal is not appropriate at this stage of the proceedings, and the Court will deny the Motion to Dismiss as

to this claim.

   B. <u>Violation of the Covenant of Good Faith and Fair Dealing</u>

Under Massachusetts law, "[a] covenant of good faith and fair dealing is implied in every contract." *Speakman v. Allmerica Fin. Life Ins. & Annuity Co.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)(citing *Uno Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957 (Mass. 2004)). The purpose of the covenant "is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance," and when operating under this covenant, "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Id.* (*citing Anthony's Pier Four, Inc. v. HBC Associates*, 583 N.E.2d 806 (Mass. 1991); *Uno Restaurants*, 805 N.E.2d 957). In a Court's determination of whether a breach has occurred, "[t]he essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance." *Id.*

Defendant argues that Plaintiff has "fail[ed] to allege that it has somehow been denied the fruits of its contracts with [Defendant]." Def.'s Mem. In Supp. at 15. What Plaintiff received from Defendant was not any less valuable because of

Defendant's dealings with Summit, and Plaintiff thus suffered no direct injury from the alleged breach. Plaintiff counters with its assertion that "by knowingly allowing Ritter and Summit to use SouthBanc's proprietary information to directly compete with SouthBanc, assisting them in doing so, and taking steps to affirmatively hide that information from SouthBanc, ChoicePoint breached its covenant of good faith and fair dealing with SouthBanc." Pl.'s Opp. at 11. These actions, according to Plaintiff, do not "conform[] to the parties' reasonable understanding of performance obligations" and thus meet the standard articulated in *Speakman* for a valid breach of covenant of good faith and fair dealing claim under Massachusetts law.

The resolution of this claim depends on the understanding of the parties regarding the treatment of the name selection process methodology. Plaintiff asserts that Defendant assured Plaintiff "that it would not allow Ritter to utilize SouthBanc's criteria to select names." *Id.* At 12. If, as alleged, that was the agreement, and it was breached by Defendant, Plaintiff has made a claim that Defendant failed to "remain faithful to the intended and agreed expectations of the parties in their performance." *Speakman*, 367 F. Supp. 2d at 132. Although the agreement regarding Summit was not explicit in the parties' written agreements, if it was part of the spirit of the bargain then Plaintiff has stated a claim for violation of the

9

covenant of good faith and fair dealing under Massachusetts law. Therefore, dismissal of this claim is not appropriate.

    C. <u>Violation of Massachusetts' Unfair Trade Practices Act</u>

"Virginia applies the *lex loci delicti*, the law of the place of the wrong, to tort actions." *Milton v. IIT Research Inst.*, 138 F.3d 519, 521 (4th Cir. 1998); *see also Dominican Republic v. AES Corp.*, 466 F. Supp. 2d 680, 693 (E.D. Va. 2006)("Virginia choice of law rules govern tort actions filed in the Eastern District of Virginia.  Virginia applies the law of the place of the wrong."). Under Virginia law, "[t]he place of the wrong or injury is the place where the injury was suffered, not where the tortious act took place." *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998). The injury claimed by Plaintiff occurred in Virginia, where Plaintiff was located.  Even if the actions leading to the injury occurred in Massachusetts, Virginia law governs tort claims arising out of that injury.  Defendant argues that Plaintiff cannot bring its unfair trade practices claim under Virginia law because "Virginia does not recognize a cause of action for deceptive trade practices." *PBM Prods. v. Mead Johnson & Co.*, 204 F.R.D. 71, 74 (E.D. Va. 2001)(citing *Mid-Atlantic Telecom, Inc. v. Long Distance Servs., Inc.*, 32 Va. Cir. 75 (Cir. Ct. Fairfax County 1993)).

Plaintiff argues that Massachusetts law governing

Consumer and Business Protection Act claims, rather than Virginia tort law, should apply to its unfair trade practices claim. Instead of the *lex loci delicti* rule, Plaintiff argues that "the Chapter 93A claim arises out of the contractual relationship between the parties" and thus, because the claim sounds in contract rather than tort, comity principles should govern the choice of law question regarding its unfair trade practices claim. Pl.'s Opp. at 14. Under comity principles, an action can be entertained in the courts of another state if it is not inconsistent with the forum state's law or policy. *See, e.g., Maryland use of Joynes v. Coard*, 9 S.E.2d 454, 456 (Va. 1940). Plaintiff relies upon a Supreme Court of Virginia case overturning the trial court's imposition of the *lex loci delicti* rule to a New York statute governing liability for vehicle owners in cases where the driver's negligence resulted in injury. The Court found that the New York statute in question was not "purely a matter of New York tort law. Instead, . . . the New York statute resembles a contractual provision imposed by statute designed to regulate the relationship between a vehicle owner and an individual operating the vehicle with permission." *Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 398 (Va. 2006). Because the statute created a contractual obligation, the claim did not sound in tort and *lex loci delicti* principles were inapplicable. Plaintiff argues that the Massachusetts law also

11

creates contractual rather than tort duties.

The Massachusetts Consumer and Business Protection Act provides a cause of action for "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal" due to "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws, ch. 93A, §§2(a), 11 (2007).  Claims under this act "may arise from conduct customarily associated with breach of contract, with torts, with a combination thereof or with acts which were not unlawful under common law, or any prior statute or regulation."  *Worldwide Commodities, Inc. v. J. Amicone Co.*, 1991 Mass. App. Div. 157, 160-161 (1991) (citing *Commonwealth v. DeCotis*, 316 N.E.2d 748 (Mass. 1974)).  "The conduct proscribed by" the Massachusetts statute "is not simply a failure to fulfill business obligations or a violation of contract terms, but those commercial acts or practices which are deceptive, unfair, fraudulent or tortious in nature."  *Id*.  The Massachusetts Act does not create new contractual obligations like the New York statute at issue in *Dreher*.  Instead, it creates liability for deceptive trade practice, a cause of action which is not recognized in Virginia.

In addition to its inapplicability under Virginia law, it is not clear to the Court that Plaintiff would be able to maintain its unfair trade practices claim in Massachusetts.  The

12

statute creating the cause of action holds that "[n]o action shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth" of Massachusetts.  Mass. Gen. Laws, ch. 93A, § 11 (2007).  It places the burden of proof "upon the person claiming that such transactions and actions did not occur primarily and substantially within the commonwealth."  *Id.*  Plaintiff claims that its allegations relate to "damage as a result of conduct which occurred in Massachusetts," placing the burden on Defendant to show that the acts complained of did not occur "primarily and substantially" in Massachusetts.  Opp. at 14.  However, in its Complaint, Plaintiff alleges both that "a substantial part of the events or omissions giving rise to [Plaintiff]'s claims occurred in Virginia" and also that "[Defendant]'s activities in processing and filing work orders . . . as well as its deceptive actions in hiding Summit's conduct from [Plaintiff], occurred in Massachusetts."  Am. Compl. ¶¶ 4, 26.  The burden is on Defendant to show that three relevant factors weigh against a finding that the deception occurred in Massachusetts: "1) where the defendant committed the deceptive or unfair acts or practices, 2) where the plaintiff received and acted upon the deceptive or unfair statements, and 3) where the plaintiff sustained losses due to

13

the unfair acts or practices." *Central Massachusetts Television, Inc. v. Amplicon, Inc.,* 930 F.Supp. 16, 26 (D.Mass. 1996) (citations omitted).  On the face of the Complaint, it appears likely to this Court that Defendant will be able to meet this burden.  In addition to Plaintiff's inability to bring a claim for the tort of deceptive trade practices in Virginia, the Court questions whether enough of the alleged deceptive conduct occurred in Massachusetts for Plaintiff to be able to bring its claim there, particularly given "the admonition of Massachusetts courts that liability under chapter 93A is not to be imposed lightly."  *Id.* at 27.

Plaintiff's unfair trade practices claim is a tort claim, with injuries suffered in Virginia, and therefore is governed by Virginia substantive law.  As Virginia does not recognize a cause of action for deceptive trade practice, this claim must be dismissed.

Plaintiff requests, as an alternative to dismissing its violation of the Massachusetts Unfair Trade Practices Act claim, that the Court transfer the case under 28 USCS § 1406(a).  In the Fourth Circuit, courts have interpreted the statute "to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." *Carefirst of Md., Inc. v. Carefirst Urgent Care Ctr., LLC (In re*

*Carefirst of Md., Inc.)*, 305 F.3d 253, 255-256 (4th Cir. 2002). Courts have generally transferred cases for lack of personal jurisdiction or improper venue, neither of which is at issue in this case.  *See, e.g., Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 277 (4th Cir. 2005); *Jenkins v. Albuquerque Lonestar Freightliner, LLC,* 464 F. Supp. 2d 491, 494 (E.D.N.C. 2006); *Screen v. Equifax Info. Sys., LLC*, 303 F. Supp. 2d 685, 690 (D. Md. 2004).  Without further showing from Plaintiff and an appropriate motion to transfer venue, the Court will not transfer the case at this time.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted as to Count 2, Plaintiff's claim of unfair trade practices, and denied as to Plaintiff's other claims.

An appropriate Order will issue.

February 11, 2008                               /s/
Alexandria, Virginia                     James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE