IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CORINTHIAN MORTGAGE CORP  )  <br> d/b/a SOUTHBANC MORTGAGE,   ) <br>                              ) <br>     Plaintiff,              ) <br>                              ) <br>     v.                       )    1:07cv832 (JCC) <br>                              ) <br> CHOICEPOINT PRECISION        ) <br> MARKETING, LLC               ) <br>                              ) <br>     Defendant.               ) | |

**M E M O R A N D U M   O P I N I O N**

`       This matter is before the Court on Plaintiff's Motion for Reconsideration or for Leave to Amend and Defendant's Motion for Reconsideration.  For the following reasons, these Motions will be granted in part and denied in part.

### I. Background

This case arises out of a contractual agreement between Plaintiff Corinthian Mortgage Corporation, doing business in Virginia during the time at issue as SouthBanc Mortgage ("SouthBanc")[1], and Defendant ChoicePoint Precision Marketing, LLC ("ChoicePoint"), a mailing list broker with a principal place of business in Massachusetts.  On or about January 23, 2002,

---

[1] Throughout its Amended Complaint and most of its pleadings, Plaintiff refers to itself as "SouthBanc."  However, in its last few filings, it refers to itself as "Corinthian."  For purposes of consistency, the Court will use Plaintiff's original choice of moniker and refer to it as "SouthBanc" throughout.

1

SouthBanc and ChoicePoint entered into an agreement (the "Service Agreement") wherein ChoicePoint agreed to assist in developing a methodology for creating lists of names and individuals to whom SouthBanc could mail targeted promotional materials.  The parties also entered into a Confidentiality and Nondisclosure Agreement delineating the treatment of information (the "Confidentiality Agreement"), which was incorporated into the Service Agreement. The Confidentiality Agreement designates as "Confidential Information" all material that "is clearly marked as proprietary, confidential or with other confidentiality notices when disclosed, or . . is identified as proprietary, confidential or with other confidentiality notices on disclosure."  Am. Compl. Ex. 2, Confidentiality Agreement at ¶ 1.  Both Agreements contained choice of law provisions indicating that they would be governed by the laws of Massachusetts.  Am. Comp. Ex. 1 at ¶ 14, Ex. 2 at ¶ 15.

Theresa Ritter ("Ms. Ritter") was a Vice President at SouthBanc and participated in communications regarding the criteria to be used in the SouthBanc name-selection methodology being developed by ChoicePoint.[2]  On or about June 30, 2003, SouthBanc terminated Ms. Ritter.  SouthBanc representatives met

---

[2] "[T]he material allegations of the complaint are taken as admitted" for the purposes of these Motions to Reconsider the Court's earlier ruling on Defendant's Motion to Dismiss.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

2

with ChoicePoint representatives to advise them of concerns that Ms. Ritter was creating a competing company, and requested that ChoicePoint not allow Ms. Ritter or a new company founded by her to use SouthBanc's criteria for selecting names.  The parties signed a Confidentiality of Information Agreement (the "COI Agreement") on August 4, 2003, in which both parties agreed "[t]o take all steps reasonably available to them to ensure that ... nonpublic personal information obtained from the other parties with respect to customers and/or business affairs" would be kept "confidential at all times."  Am. Compl. Ex. 3.  The COI Agreement defined confidential information as "any data or information other that is known to disclosing party, is competitively sensitive, and is not generally known to the public."  *Id*.  The Service Agreement, Confidentiality Agreement, and COI Agreement (collectively, the "Agreements") form the written basis of the contractual relationship between the parties.

In September, 2003, Ms. Ritter formed a competing company in Virginia, Summit Financial LLC ("Summit").  She requested names from ChoicePoint on behalf of Summit in late August of 2003, using name selection criteria similar to SouthBanc's.  ChoicePoint provided the requested information to Summit and continued to supply names using that criteria through at least January 2005.  ChoicePoint did not inform SouthBanc of,

and even took actions to keep it from becoming aware of, its business relationship with Summit, while continuing to process Summit's requests for names based on the criteria Ms. Ritter had obtained from SouthBanc.

On August 17, 2007, SouthBanc brought suit in the Eastern District of Virginia. It filed an Amended Complaint on November 28, 2007, alleging that ChoicePoint violated the covenant of good faith and fair dealing (Count I), violated Massachusetts' Unfair Trade Practices Act (Count II), and breached the Contract between the parties (Count III).

Defendant filed a Motion to Dismiss on January 11, 2008. The Court dismissed Count II and denied the Motion as to Counts I and III in a Memorandum Opinion and Order dated February 11, 2008. [Docket 17 and 18]. On February 26, 2008, Plaintiff filed a Motion for Reconsideration and a Motion for Leave to File a Second Amended Complaint. Both parties filed Oppositions to the others' Motions for Reconsideration, and Surreplies to the Opposition. Defendant's Surreply, filed on April 1, 2008, included several exhibits extraneous to the Amended Complaint, filed under seal. These Motions are currently before the Court.

## II. Standard of Review

Under Fed. R. Civ. P. 54(b), any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to

4

revision at any time before the entry of judgment." Fed. R. Civ. P. 54(b).  Thus, "a district court retains the power to reconsider and modify its interlocutory judgments ... at any time prior to final judgment." *American Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469 (4th Cir. 1991).  The district court's reconsideration of an interlocutory order is not subject to the heightened standards that apply to reconsideration of declaratory judgments.  *American Canoe*, 326 F.3d at 514.  Instead, the district judge may exercise his discretion to afford relief from his interlocutory orders "as justice requires."  *Fayetteville Investors*, 936 F.2d at 1473.  The discovery of substantially different evidence, a subsequent change in the controlling applicable law, or the clearly erroneous nature of an earlier ruling would all justify reconsideration.  *See American Canoe*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

### III. Analysis

#### A) Plaintiff's Motion for Reconsideration

SouthBanc urges the Court to reconsider its dismissal of Count II of the Amended Complaint, alleging violation of Massachusetts' Unfair Trade Practices Act, C.93A, §11, on the grounds that the claim should be governed by Massachusetts law.

The parties included in the Agreements a provision that they should be "governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Am. Compl., Ex. 1. SouthBanc argues that because its Massachusetts General Law Chapter 93A claims arise out of the contractual relationship between the parties, the Agreements' choice of law provisions govern. ChoicePoint, on the other hand, argues that the alleged violations of Chapter 93A sound in tort and therefore Virginia law applies. As described in the earlier Memorandum Opinion, Virginia applies the law of the place of the harm to tort actions, but will recognize a contract's choice-of-law provision for the parties' contractual claims. Mem. Op. at 10-14 [Docket 17].

"Claims of unfair or deceptive acts or practices, under M.G.L. ch. 93A, may be founded on acts that are associated with breach of contract, or tort, or both contract and tort, or neither." *Computer Systems Engineering, Inc. v. Qantel Corp.*, 571 F. Supp. 1365, 1371 (D. Mass. 1983)(citations omitted); *see also Conagra, Inc. v. Arkwright Mut. Ins. Co.*, 64 F. Supp. 2d 754, 767 (D. Ill. 1999). Courts in Massachusetts have held that "[w]hile 'embroidered' contract claims or 93A claims essentially sounding in contract fall within the purview of choice-of-law provisions governing contracts, claims raising allegations of fraud or misrepresentation do not." *Computer Sales Int'l, Inc. v.*

*Lycos, Inc.*, 2005 U.S. Dist. LEXIS 31326, *6-8, 2005 WL 3307507, *2 (D. Mass. 2005)(citing *Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co.*, 986 F.2d 607, 609-11 (1st Cir. 1993)). Therefore, the Court must determine whether SouthBanc's Chapter 93A claims sound in tort or in contract before it can determine whether the choice of law provision governing the contract also governs the Chapter 93A claims.

The Court has jurisdiction over this case because of the diversity of the parties. "It is axiomatic that, when sitting in diversity jurisdiction, federal courts must apply state substantive law as announced by the state's highest court." *Insteel Indus. v. Costanza Contr. Co.*, 276 F. Supp. 2d 479, 484 (E.D. Va. 2003)(citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938)). This Court, as "a federal court sitting in Virginia and exercising diversity jurisdiction applies Virginia's choice of law rules. . . . Because the Virginia choice of law rules depend on the character of the claim for relief, the Court must first determine whether the problem is actually one of tort or contract." *Id.* (citing *In re Putman*, 110 B.R. 783, 794 & n.25 (Bankr. E.D. Va. 1990); *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993).

Under Virginia law, "[i]n determining whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt*

7

*St. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998). The Supreme Court of Virginia has delineated the distinction thusly:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

*Oleyar v. Kerr*, 225 S.E.2d 398, 399-400 (Va. 1976)(quotations omitted). Under Virginia law, "a party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. However, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Richmond Metro. Auth.*, 507 S.E.2d at 347 (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (1991)).

SouthBanc alleges that all of its Chapter 93A claims sound in contract because they arise out of the contractual duties of the parties. ChoicePoint disagrees, claiming that all five identified violations of Massachusetts' Unfair Trade Practices Act sound in tort.

1) <u>Tort-Based Claims</u>

The acts of false assurance, failure to notify, and

8

intentionally hiding actions are actions of fraud and misrepresentation." Am. Compl. ¶ 32.  Under Virginia law, "[f]raud . . is purely a tort. . . . The duty to refrain from fraudulent acts is imposed by tort law, not by any contract between the parties.  The character of fraud is not changed from tort to contract merely because the parties are also engaged in a contractual relationship." *House v. Kirby*, 355 S.E.2d 303, 306 (Va. 1987)(citations omitted).  "Virginia choice of law rules govern tort actions filed in the Eastern District of Virginia.  Virginia applies the law of the place of the wrong." *Dominican Republic v. AES Corp.,* 466 F. Supp. 2d 680, 693 (E.D. Va. 2006).  Under Virginia law, "[t]he place of the wrong or injury is the place where the injury was suffered, not where the tortious act took place." *Rahmani v. Resorts Int'l Hotel, Inc.*, 20 F. Supp. 2d 932, 937 (E.D. Va. 1998).  SouthBanc is located in Virginia, and its alleged injuries were suffered here.  Therefore, in regards to the tort-based claims under Chapter 93A, the Court will "apply Virginia law because fraud is a tort." *Ward's Equip. v. New Holland N. Am.*,  493 S.E.2d 516, 520 (Va. 1997).

In a case with a similar question of whether unfair competition claims sounded in tort or contract, a District Court in Massachusetts applying Maryland choice of law rules to determine if a contract's Massachusetts choice of law provision should apply to its Chapter 93A claims, the court determined that

9

"to the extent that [Plaintiff]'s Chapter 93A claims are based on tort concepts such as fraud or tortious interference with business relations, these claims must be seen as tort-based and thus barred from consideration as claims brought under Massachusetts law" and not recognized by Maryland's tort laws. *Trent Partners & Assocs. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 98 (D. Mass. 1999).  The same result is reached under Virginia law.

"Virginia continues to adhere to a narrow, sharply defined common law definition of unfair competition, i.e. 'deception, by means of which goods of one dealer are palmed off as those of another.'" *Monoflo International, Inc. v. Sahm*, 726 F. Supp. 121, 127-128 (E.D. Va. 1989)(quoting *Benjamin T. Crump Co. v. J. L. Lindsay, Inc.*, 107 S.E. 679, 684 (1921))(denying recovery for a claim of unfair competition based on a misrepresentation); *see also Mid-Atlantic Telecom, Inc. v. Long Distance Servs.*, 32 Va. Cir. 75, 77 (Va. Cir. Ct. 1993) ("the alleged misrepresentations asserted . . . cannot serve as basis for a common-law claim within Virginia's narrow definition of unfair competition.").  In addition to limiting claims of unfair competition to a narrow type of deception, "Virginia does not recognize a cause of action for deceptive trade practices."  *PBM Prods. v. Mead Johnson & Co.*, 204 F.R.D. 71, 74-75 (E.D. Va. 2001).  SouthBanc's allegations of fraudulent misrepresentation

10

and deceptive trade practices are not actionable in Virginia. Its tort-based Chapter 93A claims are not covered by the Massachusetts choice of law provision in the Agreements and cannot be brought under Virginia law.  SouthBanc has failed to state a claim for its tort-based unfair trade practices, and the Court will affirm its earlier dismissal of these claims in Count II of the Amended Complaint.

   2) <u>Contract-Based Claims</u>

   SouthBanc alleges two other violations of Chapter 93A: that Choicepoint "allowed Summit to utilize the proprietary criteria developed by SouthBanc" and that it "created a model for Summit . . . using SouthBanc's proprietary data."  Am. Compl. ¶ 32.  The duties breached by these actions appear to arise out of the contractual relationship of the parties rather than an independent duty.  These two actions both involve the use of data in a way SouthBanc alleges is contrary to the contractual relationship between the parties.  Because the source of the allegedly breached duties is contractual, the choice of law provision from the Agreements governs these claims.

   The Court will turn to the question of whether SouthBanc has alleged sufficient facts to state a claim under Massachusetts' Consumer and Business Protection Act Chapter 93A. Courts have found that

> [c]onduct in disregard of known contractual
> arrangements and intended to secure benefits

11

> for the breaching party constitutes an unfair act or practice for c. 93A purposes. Accordingly, conduct undertaken as leverage to destroy the rights of another party to the agreement, particularly unilateral, self-serving conduct during the course of a dispute, based on a position lacking substantive merit, has been found to violate c. 93A.  However, a mere breach of contract, without more, does not amount to a c. 93A violation.  Even a breach accompanied by sham justifications has been held not to violate c. 93A, where the conduct lacks an extortionate quality arising from use of the breach as a lever to obtain advantage for the party committing the breach in relation to the other party.

*Clay Chevrolet, Inc. v. Hatziiliades*, 23 Mass. L. Rep. 35 (Mass. Super. Ct. 2007)(internal quotations omitted).  In determining whether a party has breached Chapter 93A, courts are to "focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors."  *Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc.*, 420 Mass. 39, 43 (Mass. 1995).

SouthBanc's remaining allegations under Chapter 93A do not rise to this level of unfairness.  Allowing the use of proprietary data and using that data to create a model for another customer lacks any "extortionate quality."  SouthBanc does not allege that ChoicePoint was attempting to obtain any leverage through these actions.  The only benefit received by ChoicePoint was business from another customer, and SouthBanc asserts that even that action was done at the risk of losing SouthBanc's business.  Am. Compl. ¶ 15.

12

As SouthBanc fails to state a claim under Massachusetts' Unfair Trade Practices Act, the Court will not overturn its earlier decision to dismiss Count II of the Amended Complaint.  Therefore, it will grant Plaintiff's Motion for Reconsideration, but will affirm its granting of Defendant's Motion to Dismiss as to Count II.

**B) Plaintiff's Motion for Leave to Amend**

As an alternative to reconsidering its decision regarding Defendant's Motion to Dismiss, SouthBanc requests that the Court grant its Motion to File a Second Amended Complaint, which adds a cause of action for Violation of Virginia Code Ann. §§ 18.2-499 and -500.

A party may amend its complaint after a responsive pleading has been served "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).  Rule 15 of the Federal Rules of Civil Procedure directs that "leave shall be freely given when justice so requires."  *Id.*  Therefore, "leave to amend a pleading should be denied '*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).  "There is no error in disallowing an amendment when the claim sought to be pleaded by

13

amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 420-421 (4th Cir. 1990).

ChoicePoint argues that SouthBanc's proposed amended claims would be subject to dismissal, making the amendment futile. "A claim for statutory civil conspiracy under Virginia law must allege (1) two or more persons combined, associated, agreed, or mutually undertook together to (2) willfully and maliciously injure another in his reputation, trade, business, or profession." *T.G. Slater & Son v. Donald P. & Patricia A. Brennan LLC,* 385 F.3d 836, 845 (4th Cir. 2004) (citing Va. Code Ann. §§ 18.2-499, 500; *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 924-25 (E.D. Va. 2000)). A Virginia Code § 18.2-499 claim of "business conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.' The heightened pleading standard prevents every business dispute over unfair competition becoming a business conspiracy claim." *Gov't Emples. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004)(quoting *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003)). Therefore, "in order to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose. . . . In addition, to survive a motion to dismiss, an allegation of conspiracy must include

either an unlawful act or an unlawful purpose." *Bay Tobacco, LLC*, 261 F. Supp. 2d at 499 (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999).

In its explication of the alleged conspiracy, SouthBanc alleges that ChoicePoint knew Ritter was previously employed by SouthBanc, that she was forming a company to compete with SouthBanc, and that the orders she placed with ChoicePoint were based on SouthBanc's data. ChoicePoint's decision to do business with Ritter was not a conspiracy, as "[t]here can be no conspiracy to do an act which the law allows." *Hechler Chevrolet, Inc. v. General Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985). SouthBanc asserts that the unlawful act that the parties conspired to perform was to intentionally hide its business with Ritter, thereby "aid[ing] and abett[ing] Ritter in violating her fiduciary obligations" still owed to SouthBanc. Pl.'s Reply to Def.'s Opp'n at 10.

SouthBanc's allegations of aiding and abetting "fail to aver any concerted action or preconceived plan. . . . [SouthBanc] aver[s] that this scheme was 'unlawful' but do[es] not provide any description as to how it is unlawful. . . . [It] allege[s] that the conspiracy caused injury, but provide[s] no detail as to what type or to what extent injury occurred." *First Hand Communs., LLC v. Schwalbach*, 2006 U.S. Dist. LEXIS 87844 *16; 2006 WL 3500901, *5 (E.D. Va. 2006). The only motive

15

mentioned by SouthBanc is "to avoid losing [Plaintiff] as a customer, instead preferring the additional revenue they would get from [Plaintiff]'s business."  Pl.'s Reply to Def.'s Opp'n at 10.  Aversion to losing business is not an unlawful purpose and does not rise to the level of willful and malicious injury.  "A plaintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business, but, importantly, the plaintiff must prove that such a purpose was at least one of the purposes of the conspiracy."  *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 2d 321, 326 (W.D. Va. 2007)(quoting *Simmons v. Miller*, 544 S.E.2d 666, 676-77 (Va. 2001)).  SouthBanc fails to plead any such purpose.

Other than the conclusory allegation that ChoicePoint conspired with Ritter and/or Summit, there are no factual allegations of an actual agreement or undertaking to do something unlawful.  Nor is there any allegation of a malicious or unlawful purpose.  SouthBanc has failed to "at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" *Bay Tobacco, LLC*, 261 F. Supp. 2d at 499 (quoting *Lewis v. Gupta*, 54 F. Supp. 2d 611, 618 (E.D. Va. 1999)).  SouthBanc's proposed amendment to the Complaint would be subject to a motion to dismiss and is therefore futile.  For this reason, Plaintiff's Motion for Leave to Amend will be denied.

### C) Defendant's Motion for Reconsideration

ChoicePoint moves the Court to reconsider its earlier decision not to dismiss Counts I and III of the Amended Complaint. It claims that SouthBanc fails to give factual allegations in support of its argument "that the parties' post-contract conduct modified these Agreements," and thus that the Court erred in its finding that SouthBanc made sufficient allegations of contract modification for its claims to survive a motion to dismiss.

In support of its arguments, ChoicePoint has presented documents to the Court that fall outside of the complaint. Generally, a "motion to dismiss for failure to state a claim does not permit the Court to look outside the complaint." *Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 281 (E.D. Va. 1995). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). There is an exception allowing a Court to consider outside documents that are "quoted, relied upon, or incorporated by reference in the complaint, [and] also official public records pertinent to the plaintiffs' claims," if the document is "one of unquestioned authenticity." *Gasner*, 162 F.R.D. at 282 (citing 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil*, § 1837, at 762-63 (2d ed.

1990); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).  The documents provided by ChoicePoint do not fall into this exception.  The parties declined to have the Court treat this Motion as one for Summary Judgment.  The Court will exclude the new documents from consideration on this Motion.

ChoicePoint indicated that the new information demonstrates that SouthBanc violated Federal Rule of Civil Procedure 11 by making "false allegation and misleading arguments."  Def.'s Reply Mem. in Supp. of its Mot. for Reconsideration at 2.  At oral argument, it indicated a desire to have SouthBanc withdraw its arguments and allegations that are shown to be improper by these documents.  ChoicePoint has not filed an explicit motion requesting relief from the Court regarding the alleged Rule 11 violation.  Because it is excluding the documents from consideration on this Motion, the Court declines to consider the instigation of sanctions or other disciplinary action on its own initiative.

Apart from the information provided in the excluded documents, ChoicePoint's most significant argument in its Motion for Reconsideration is that SouthBanc fails to sufficiently allege that the Agreements were modified or that there was any

consideration to support a modification.  "Federal practice simply requires notice pleading, and plaintiffs need not *allege* adequate consideration" to maintain a breach of contract claim on a Motion to Dismiss.  *Stellar Ins. Group, Inc. v. Cent. Cos., LLC*, 2006 U.S. Dist. LEXIS 75801 *23; 2006 WL 2862218, *8 (W.D. N.C. 2006)(emphasis in original).  For the reasons stated in the Memorandum Opinion of February, 11, 2008, the Court finds that, taking the allegations of the Amended Complaint as admitted, SouthBanc has met the Rule 8 standard of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8 [Docket 17].  Therefore, the Court will deny Defendant's Motion for Reconsideration, and will not dismiss Counts I and III of the Amended Complaint.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be granted and the dismissal of Count II is affirmed; Plaintiff's Motion for Leave to Amend will be denied; and Defendant's Motion for Reconsideration will be denied.

An appropriate Order will issue.

April 4, 2008                                    /s/
Alexandria, Virginia                   James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

19