IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| CORINTHIAN MORTGAGE CORP ) | | |
| d/b/a SOUTHBANC MORTGAGE, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | 1:07cv832 (JCC) | |
| ) | | |
| CHOICEPOINT PRECISION ) | | |
| MARKETING, LLC ) | | |
| ) | | |
| Defendant. ) | | |

**M E M O R A N D U M   O P I N I O N**

` This matter is before the Court on Plaintiff's Motion for Order of jury Trial. For the following reasons, this Motion will be denied.

### I. Background

This case arises out of a contractual agreement between Plaintiff Corinthian Mortgage Corporation, doing business in Virginia during the time at issue as SouthBanc Mortgage ("SouthBanc"), and Defendant ChoicePoint Precision Marketing, LLC ("ChoicePoint"), a mailing list broker with a principal place of business in Massachusetts. On or about January 23, 2002, SouthBanc and ChoicePoint entered into an agreement (the "Service Agreement") wherein ChoicePoint agreed to assist in developing a methodology for creating lists of names and individuals to whom SouthBanc could mail targeted promotional materials. The parties

-1-

also entered into a Confidentiality and Nondisclosure Agreement delineating the treatment of information (the "Confidentiality Agreement"), which was incorporated into the Service Agreement. The Confidentiality Agreement designates as "Confidential Information" all material that "is clearly marked as proprietary, confidential or with other confidentiality notices when disclosed, or . . is identified as proprietary, confidential or with other confidentiality notices on disclosure." Am. Compl. Ex. 2, Confidentiality Agreement at ¶ 1. Both Agreements contained choice of law provisions indicating that they would be governed by the laws of Massachusetts. Am. Comp. Ex. 1 at ¶ 14, Ex. 2 at ¶ 15.

Theresa Ritter ("Ms. Ritter") was a Vice President at SouthBanc and participated in communications regarding the criteria to be used in the SouthBanc name-selection methodology being developed by ChoicePoint. On or about June 30, 2003, SouthBanc terminated Ms. Ritter. SouthBanc alleges that its representatives met with ChoicePoint representatives to advise them of concerns that Ms. Ritter was creating a competing company, and requested that ChoicePoint not allow Ms. Ritter or a new company founded by her to use SouthBanc's criteria for selecting names. The parties signed a Confidentiality of Information Agreement (the "COI Agreement") on August 4, 2003, in which both parties agreed "[t]o take all steps reasonably

available to them to ensure that ... nonpublic personal information obtained from the other parties with respect to customers and/or business affairs" would be kept "confidential at all times." Am. Compl. Ex. 3.  The COI Agreement defined confidential information as "any data or information other that is known to disclosing party, is competitively sensitive, and is not generally known to the public." *Id*.  The Service Agreement, Confidentiality Agreement, and COI Agreement (collectively, the "Agreements") form the written basis of the contractual relationship between the parties.

In September, 2003, Ms. Ritter formed a competing company in Virginia, Summit Financial LLC ("Summit").  She requested names from ChoicePoint on behalf of Summit in late August of 2003, using name selection criteria similar to SouthBanc's.  ChoicePoint provided the requested information to Summit and continued to supply names using that criteria through at least January 2005.  SouthBanc alleges that ChoicePoint did not inform SouthBanc of, and even took actions to keep it from becoming aware of, its business relationship with Summit, while continuing to process Summit's requests for names based on the criteria Ms. Ritter had obtained from SouthBanc.

On August 17, 2007, SouthBanc brought suit in the Eastern District of Virginia.  It filed an Amended Complaint on November 28, 2007, alleging that ChoicePoint violated the

covenant of good faith and fair dealing (Count I), violated Massachusetts' Unfair Trade Practices Act (Count II), and breached the Contract between the parties (Count III).  Defendant filed a Motion to Dismiss on January 11, 2008.  The Court dismissed Count II (the "Chapter 93A claim") and denied the Motion as to Counts I and III in a Memorandum Opinion and Order dated February 11, 2008.  [Docket 17 and 18].  On February 26, 2008, Plaintiff filed a Motion for Reconsideration and a Motion for Leave to File a Second Amended Complaint, which was followed by a Motion for Reconsideration by Defendant.  In a Memorandum Opinion dated April 4, 2008, Plaintiff's Motion for Reconsideration was granted, the dismissal of Count II was affirmed, and the Court denied Plaintiff's Motion for Leave to Amend and Defendant's Motion for Reconsideration.

On May 2, 2008, Plaintiff filed a Motion for Order of Jury Trial.  Defendant responded on May 13, 2008.  This Motion is currently before the Court.

## II. Standard of Review

"[A] party may demand a jury trial by . . serving the other parties with a written demand . . . no later than 10 days after the last pleading directed to the issue is served. . . . A party waives a jury trial unless its demand is properly served and filed."  Fed. R. Civ. P. 38(b), (d).  When a party fails to make a demand, "the court may, on motion, order a jury trial on

any issue for which a jury might have been demanded," and "the decision to grant a jury trial pursuant to Rule 39(b) is committed to the discretion of the trial court."  Fed. R. Civ. P. 39; *Malbon v. Pennsylvania Millers Mut. Ins. Co.*, 636 F.2d 936, 940 (4th Cir. 1980).

## II. Analysis

"The Fourth Circuit has indicated that district courts should grant untimely jury requests only when the plaintiff demonstrates 'exceptional circumstances' for his delay." *Jones v. Boyd*, 161 F.R.D. 48, 50 (E.D. Va. 1995)(citing General Tire & Rubber Co. v. Watkins, 331 F.2d 192, 192 (4th Cir. 1964).  Courts consider four factors in determining whether such circumstances exist such that a jury trial demand should be granted under Rule 39(b):

> (1) whether the issues are more appropriate for determination by a jury or a judge (i.e., factual versus legal, legal versus equitable, simple versus complex); (2) whether permitting a jury trial would prejudice the opposing party; (3) when the motion was made (early or late in the proceedings); and (4) whether granting a jury trial would affect adversely the court's docket and the orderly administration of justice.

*Vannoy v. Cooper*, 872 F. Supp. 1485, 1486-87 (E.D. Va. 1995)(citing *Malbon,* 636 F.2d at 940.  In addition, "several courts have considered a fifth factor: the reason for the failure to make a timely demand."  *Id.*  The Court will consider each of

these factors in turn.

The remaining Claims in this action are for breach of contract and breach of covenant of good faith and fair dealing. Plaintiff argues that resolution of these Claims will involve primarily factual determinations, appropriate for determination by a jury. Defendant, however, argues that many of the claims present legal issues for the Court, most notably that the search criteria were proprietary to SouthBanc, that Ms. Ritter had a legal duty not to make use of the criteria, and that ChoicePoint had a legal duty to prevent her use of it. Under Massachusetts law, "[t]he interpretation of a contract is a question of law for the court. Whether a contract is ambiguous is also a question of law." *Eigerman v. Putnam Invs., Inc.*, 450 Mass. 281, 286 (Mass. 2007)(citing *Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1083 (1st Cir. 1989)). If a Court determines that "a contract is ambiguous, its interpretation creates a question of fact for the jury." *Bay Colony Sys. v. Judson*, 15 Mass. L. Rep. 579 (Mass. Super. Ct. 2002)(citing *Trafton v. Custeau*, 338 Mass. 305, 307-08, 155 N.E.2d 159 (1959)). Plaintiff argues that the Court may find that the Contract is ambiguous and require parole evidence, the weight of which should be determined by a jury. Due to the chance the Court may finding ambiguity, this factor weighs slightly in favor of a jury trial.

The Court now turns to the second factor, whether

permitting a jury trial will prejudice Defendant.  Defendant argues that because Plaintiff would not be prejudiced by a bench trial, this factor weighs against the allowance of a jury trial.  In addition, Defendant argues that it has been preparing its case in expectation of a bench trial, and that it "would be prejudiced if it was required to change its case preparation, including perhaps obtaining additional experts, at this late stage in litigation."  Def.'s Mem. in Opp'n to Pl.'s Mot. for Order of Jury Trial at 14.  The Court finds that there is a slight danger of prejudice to Defendant in ordering a jury trial at this stage of preparation.

The third factor for the Court to consider is when the Motion was made.  Plaintiff's request comes only a few weeks before the discovery deadline of June 13, 2008, and almost seven months after it filed its Complaint.  Plaintiff argues that allowing a jury trial would not alter pretrial preparation.  Defendant disagrees, arguing that it "has been preparing its case and selecting its experts based on its expectation of a bench trial for many months." *Id.* at 14.  As discussed in more detail below, this Motion was extremely untimely.  The Court finds that this factor weighs against the grant of a jury trial under Rule 39(b).

The Court next turns to the fourth factor, whether granting a jury trial would have an adverse effect on the court's

docket and the orderly administration of justice.  Plaintiff cites a Western District of Virginia case arguing that a jury trial is appropriate even if it adversely affects the court's docket, because "the manner in which [a jury trial] benefits the effective administration of justice far outweighs the scheduling difficulties it can cause."  Pl's Mem. in Supp. of Mot. For Order of Jury Trial (citing *Lawrence v. Hanson*, 197 F. Supp. 2d 533, 537 (W.D. Va. 2002)).  However, in the case cited by Plaintiff, the jury demand "was made well before the trial date," several months before the close of discovery, and defendants did not argue that they were prejudiced by the demand.  *Lawrence,* 197 F. Supp. 2d at 537.  In this case, the demand is made not long before trial, and will affect Defendant's ability to adequately prepare.  It will not, however, significantly affect the Court's docket.  Therefore, this factor does not weigh in favor of denying a jury trial.

As to the fifth factor, reason for failure to make a timely demand, Plaintiff argues that it initially did not make a jury demand because its Chapter 93A Claim could not have been tried before a jury.  However, Defendant argues that those claims are subject to trial by jury.  The United States District Court for the District of Massachusetts recently held that "the Seventh Amendment requires trial of chapter 93A claims by jury in federal courts where actual and punitive damages are sought."  *Mass. Eye*

*& Ear Infirmary v. QLT, Inc.*, 495 F. Supp. 2d 188, 197 (D. Mass. 2007).  Therefore, Plaintiff could have made a timely jury demand on all three of its claims.  Even if the Court accepts Plaintiff's argument that it could not have received a jury trial on its Chapter 93A Claim, Plaintiff could have made a timely jury demand for its other two claims.  In addition, even after the Court dismissed the Chapter 93A claim, Plaintiff did not file this jury demand for more than ten weeks.  Under Federal Rule of Civil Procedure 38(b), Plaintiff had "no later than 10 days after the last pleading directed to the issue is served," in this case, Defendant's filing of its Answer, to file its jury demand.  Fed. R. Civ. Pro. 38(b).  Rather than filing before March 10, 2008, within that ten-day window, Plaintiff did not request a jury trial until May 2, 2008.[1]  Even if the Court were to construe the deadlines very generously, and allow ten days after the Court's ruling on Plaintiff's Motion to Reconsider of April 4, 2008, Plaintiff's jury demand would still be considered untimely.  Plaintiff's Motion is not timely and its delay in filing is unwarranted.

Upon weighing each of the five factors laid out by the Fourth Circuit, the Court finds that the Plaintiff has not

---

[1] Plaintiff argues that it did not file during the month of April because it was "informed that Judge Cacheris would be away from the Court." Pl.'s Mem. in Supp. of Mot. for Order of Jury Trial at 4.  The Court is dismayed at this argument, as the absence of one Judge from Court does not prevent timely filing of motions, particularly as another Judge was available to take all of Judge Cacheris's motions during his absence.

-9-

demonstrated exceptional circumstances and therefore granting a jury trial under Rule 39(b) would be inappropriate in this case.

### IV.   Conclusion

For the foregoing reasons, Plaintiff's Motion for Order of Jury Trial will be DENIED.

An appropriate Order will issue.

May 19, 2008  /s/
Alexandria, Virginia  James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE