IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CORINTHIAN MORTGAGE CORP       )
d/b/a SOUTHBANC MORTGAGE,       )
                                )
        Plaintiff,              )
                                )
        v.                      )       1:07cv832 (JCC)
                                )
CHOICEPOINT PRECISION           )
MARKETING, LLC                  )
                                )
        Defendant.              )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion
for Judgment on the Pleadings.  For the following reasons, this
Motion will be granted in part and denied in part.

**I. Background**

This case arises out of a contractual agreement between
Plaintiff Corinthian Mortgage Corporation, doing business in
Virginia during the time at issue as SouthBanc Mortgage
("SouthBanc"), and Defendant ChoicePoint Precision Marketing, LLC
("ChoicePoint"), a mailing list broker with a principal place of
business in Massachusetts.  On or about January 23, 2002,
SouthBanc and ChoicePoint entered into an agreement (the "Service
Agreement") wherein ChoicePoint agreed to assist in developing a
methodology for creating lists of names and individuals to whom
SouthBanc could mail targeted promotional materials.  The parties

1

also entered into a Confidentiality and Nondisclosure Agreement
delineating the treatment of information (the "Confidentiality
Agreement"), which was incorporated into the Service Agreement.
The Confidentiality Agreement designates as "Confidential
Information" all material that "is clearly marked as proprietary,
confidential or with other confidentiality notices when
disclosed, or . .  is identified as proprietary, confidential or
with other confidentiality notices on disclosure."  Am. Compl.
Ex. 2, Confidentiality Agreement at ¶ 1.  Both Agreements
contained choice of law provisions indicating that they would be
governed by the laws of Massachusetts.  Am. Comp. Ex. 1 at ¶ 14,
Ex. 2 at ¶ 15.

Theresa Ritter ("Ms. Ritter") was a Vice President at
SouthBanc and participated in communications regarding the
criteria to be used in the SouthBanc name-selection methodology
being developed by ChoicePoint.  On or about June 30, 2003,
SouthBanc terminated Ms. Ritter.  SouthBanc representatives met
with ChoicePoint representatives to advise them of concerns that
Ms. Ritter was creating a competing company, and requested that
ChoicePoint not allow Ms. Ritter or a new company founded by her
to use SouthBanc's criteria for selecting names.  The parties
signed a Confidentiality of Information Agreement (the "COI
Agreement") on August 4, 2003, in which both parties agreed "[t]o
take all steps reasonably available to them to ensure that ...

nonpublic personal information obtained from the other parties with respect to customers and/or business affairs" would be kept "confidential at all times."  Am. Compl. Ex. 3.  The COI Agreement defined confidential information as "any data or information other that is known to disclosing party, is competitively sensitive, and is not generally known to the public."  *Id.*  The Service Agreement, Confidentiality Agreement, and COI Agreement (collectively, the "Agreements") form the written basis of the contractual relationship between the parties.

In September, 2003, Ms. Ritter formed a competing company in Virginia, Summit Financial LLC ("Summit").  She requested names from ChoicePoint on behalf of Summit in late August of 2003, using name selection criteria similar to SouthBanc's.  ChoicePoint provided the requested information to Summit and continued to supply names using that criteria through at least January 2005.  ChoicePoint did not inform SouthBanc of, and even took actions to keep it from becoming aware of, its business relationship with Summit, while continuing to process Summit's requests for names based on the criteria Ms. Ritter had obtained from SouthBanc.

On August 17, 2007, SouthBanc brought suit in the Eastern District of Virginia.  It filed an Amended Complaint on November 28, 2007, alleging that ChoicePoint violated the

covenant of good faith and fair dealing (Count I), violated Massachusetts' Unfair Trade Practices Act (Count II), and breached the Contract between the parties (Count III).  Defendant filed a Motion to Dismiss on January 11, 2008.  The Court dismissed Count II and denied the Motion as to Counts I and III in a Memorandum Opinion and Order dated February 11, 2008, [17, 18] and affirmed the dismissal of Count II while denying Plaintiff's Motion for Leave to File a Second Amended Complaint on April 4, 2008. [41, 42].

On June 6, 2008, Defendant filed a Motion for Judgment on the Pleadings.  Plaintiff responded on June 20, 2008.  This Motion is currently before the Court.

## II. Standard of Review

Pursuant to Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  Fed. R. Civ. P. 12(c).  "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law."  *O'Ryan v. Dehler Mfg. Co.*, 99 F. Supp. 2d 714, 717-718 (E.D. Va. 2000)(citations omitted).  To ensure that each litigant receives a full and fair hearing, courts will not grant a Rule 12(c) motion "unless the movant clearly establishes that no material issue of fact remains

4

to be resolved and that he is entitled to judgment as a matter of law." *O'Ryan*, 99 F. Supp. 2d at 718; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III. Analysis

ChoicePoint attached two exhibits to its Memorandum in Support, exhibits that were not part of the complaint or answer. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). ChoicePoint has requested that the Court not treat this as a Motion for Summary Judgment, and therefore the Court will not consider its exhibits.

ChoicePoint argues that both of SouthBanc's remaining claims are barred by Virginia's statute of limitations. As a federal court sitting in diversity, this Court must apply the choice of law rules of Virginia, the forum state. *See Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.,* 892 F.2d 355, 357-358 (4th Cir. 1989). "Statutes of limitations are considered matters of procedure in Virginia courts, unless they are so bound up with the substantive law of a claim that the limitations period is itself considered substantive." *RMS Tech., Inc. v. TDY Indus.*, 64 Fed. Appx. 853, 857 (4th Cir.2003) (unpublished)(citing *Jones v. R.S. Jones and Assoc., Inc.*, 431

S.E.2d 33, 35 (Va. 1993)).  Therefore, although Virginia will give effect to the Agreements' choice of law provisions and apply Massachusetts law as it governs the contract, *see, e.g., Peugeot*, 892 F.2d at 357-358; *Tate v. Hain*, 25 S.E.2d 321, 324 (1943), Virginia's procedural statutes of limitation will govern the action.

ChoicePoint argues that the Virginia statute of limitations for oral contracts governs both Counts I and III, and thus that they were filed out of time.  The Court will consider each Count in turn.

A) **Statute of Limitations for Count I: Breach of Covenant of Good Faith and Fair Dealing**

ChoicePoint argues that SouthBanc's claim for good faith and fair dealing is implied in law and as such is subject to a three year statute of limitations, not the five year limit for written contracts.  "Virginia Code § 8.01-246(4) provides that actions based on unwritten contracts must be brought within three years of the cause of action accruing.  This provision applies to both express unwritten contracts and contracts implied in law." *RMS Tech.*, 64 Fed. Appx. at 857 (citing *Harbour Gate Owners' Ass'n v. Berg*, 348 S.E.2d 252, 257 (Va. 1986)). SouthBanc argues that the claim at issue is neither unwritten nor implied in law, but is part of the Agreements.

Under Massachusetts law, "[e]very contract is subject

6

to an implied covenant of good faith and fair dealing." *Liss v. Studeny*, 879 N.E.2d 676, 679 (Mass. 2008) (citing *Kerrigan v. Boston*, 278 N.E.2d 387, 393 (Mass. 1972)).  The Supreme Judicial Court of Massachusetts has held that "[t]he covenant may not . . . be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004); *see also Liss,* 879 N.E.2d at 680.  SouthBanc requests that the Court, in its enforcement of the written contract between the parties, include the covenant of good faith and fair dealing that is applicable to all contracts under Massachusetts law.

Virginia law, like Massachusetts', recognizes that "[a] statutory requirement affecting a private contract, if not expressed in the written agreement, nevertheless becomes a part of its terms. A pertinent statute is as much a part of the contract as if it were incorporated in it." *Harbour Gate*, 348 S.E.2d at 257 (citing *Paul v. Paul*, 203 S.E.2d 123, 125 (1974); *Maxey v. American Cas. Co.*, 23 S.E.2d 221, 223 (1942)).  However, the statutory requirement does not become a part of the written

contract for the purposes of Virginia's statue of limitations.[1]
Under Virginia law, "[s]tatutory requirements . . . imported into
private contracts are not . . . writings 'signed by the party to
be charged' so as to be governed by the five-year statute of
limitations" for written contracts. *Id.* Therefore, "[w]here a
written contract is silent on a matter controlled by statute, the
statutory requirement becomes an unwritten term of the contract
implied in law," governed by the shorter statute of limitations
for unwritten contracts. *Id.* (citing *Atlantic Coast Line R. Co.
v. Va. Mfg. Co.*, 89 S.E. 103, 104 (1916)).  Under Virginia law,
therefore, the three-year statute of limitations applies to
SouthBanc's claims for breach of the covenant of good faith and
fair dealing, since it is an unwritten term of the contract.

ChoicePoint argues that SouthBanc's claims arise
outside of the three-year limitation and thus are all time-
barred.  SouthBanc argues that their claims "would not be barred
as to any injury accruing during the three-year period preceding
the filing of this complaint."  Pl.'s Opp'n at 7.  It argues that
"[e]ach time ChoicePoint utilized SouthBanc's confidential and
proprietary information in providing names to Summit to use in is
mailings, ChoicePoint breached the covenant of good faith and
fair dealing implied in the contracts between the parties."  *Id.*

---

[1] Massachusetts does not distinguish between written contracts and
unwritten or implied-at-law contracts in its statute of limitations for breach
of contract actions.  Mass. Gen. Laws ch. 260, § 2.

SouthBanc characterizes the injury it suffered as similar to copyright infringement claims or the tort of unfair competition, both of which "can be comprised of a multitude of separate and distinct claims, where 'each occurrence inflicts a new injury and gives rise to a separate cause of action.'" under Virginia law. *Hoey v. Dexel Systems Corp.*, 716 F. Supp. 222, 224 (E.D. Va. 1989)(quoting *Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E.2d 841 (1987)).

Under Virginia law, if a claimed injury "is of a permanent nature and one that produces 'all the damage which can ever result from it, then the entire damages must be recovered in one action,' and the statute of limitations begins to run from the date of the wrongful act." *Hampton Roads,* 360 S.E.2d at 843 (quoting *Norfolk & W.R. Co. v. Allen*, 87 S.E. 558, 560 (Va. 1916)). ChoicePoint argues that SouthBanc has alleged a single breach that occurred when "ChoicePoint violated its purported duty to prevent Summit from using SouthBanc's 'proprietary' name search methodology in September 2003," with continued use of the criteria, not comprising a new breach, through at least January 2005. Def.'s Reply Mem. in Supp. of its Motion for J. on the Pleadings at 9. Rather than a series of breaches, ChoicePoint characterizes SouthBanc's alleged injury as a "continuous breach," analogous to the Virginia Supreme Court case of *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 379 S.E.2d

316 (Va. 1989).  Def.'s Reply Mem. in Supp. at 7.  In that case, the court held that the continued failure of defendant to enforce a contract provision, along with unpunished subsequent violations by other tenants, did not create new injuries.  *Westminster,* 379 S.E.2d at 318.  Although injury continued to accrue, the statute of limitations began to run the moment the contract was first breached.  *Id.*

In a case involving an alleged repeated breach of contract, the Virginia Supreme Court found that "[w]hether the [defendant]'s actions constituted a single continuing breach contemplated by *Westminster* or a series of separate breaches addressed in *Hampton Roads* depends on the relevant facts."  *Am. Physical Therapy Ass'n v. Fed'n of State Bds. of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006).  On the facts before it, the Court concluded that "the [defendant]'s actions constituted direct, separate breaches of the Agreement, and the [plaintiff] is entitled to bring its claims for those breaches of contract that occurred" within the statute of limitations.  *Id.* at 930.

In this case, "[e]very month ChoicePoint processed a work order from Summit," which meant that "every month they collected a separate group of names that they then gave to Summit, and every month Summit sent out mailers using those names."  Hr'g Tr. 22, June 27, 2008.  As SouthBanc characterizes its claim, "[e]very single month there was a new work order, a

10

new set of names, a new mailing, and new damage." *Id*.
Massachusetts' "implied covenant of good faith and fair dealing
provides that neither party shall do anything that will have the
effect of destroying or injuring the right of the other party to
receive the fruits of the contract." *Anthony's Pier Four, Inc.
v. HBC Assoc.*, 583 N.E.2d 806, 820 (Mass. 1991)(internal
citations and quotations omitted).  Each alleged use of the
purportedly proprietary criteria to create a new set of names and
new mailing injured the right of SouthBanc to receive the fruits
of its contract with ChoicePoint and could give rise to a claim.
Therefore, SouthBanc is entitled to bring its claims for the
breaches of good faith and fair dealing that occurred in the
three years before the filing of this action.

      The Court will apply Virginia's three year statute of
limitations to SouthBanc's claims for breach of covenant of good
faith and fair dealing.  SouthBanc's claims that accrued outside
the three-year limitation are barred, but those claims that
accrued within that time will be allowed.

**B) <u>Statute of Limitations for Count III: Breach of Contract</u>**

      ChoicePoint alleges that SouthBanc "has failed to
identify any specific provision of" the written agreements
between the parties "that ChoicePoint has breached."  Def.'s Mem.
in Supp. of Mot. for J. on the Pleadings at 7.  Instead,
ChoicePoint characterizes SouthBanc as having argued "that the

parties somehow orally amended or modified the terms of the
written contracts between the parties," such that its "breach of
contract claim is based, at least to some degree, upon some
supposed oral agreement or oral amendment or modification of the
written contracts between the parties." *Id.* at 7-8.  It argues
that SouthBanc's claim is barred by the three-year statute of
limitations applicable to oral agreements and oral amendments to
written contracts.

SouthBanc disagrees with that characterization.  It
argues that it "has not alleged a specific breach of an oral
amendment to the parties [sic] written agreement, but has merely
pointed to evidence of the parties' course of performance
*evidencing* the intent of the written agreements," as allowed
under Massachusetts law.  Pl.'s Opp'n to Def.'s Mot. for J. on
the Pleadings at 8 (ital. in original).

Under Massachusetts law, "the language of a contract
need not be ambiguous on its face in order that extrinsic
evidence may be admitted." *Keating v. Stadium Mgmt. Corp.*, 508
N.E.2d 121, 123 (1987).  Parol evidence may be admitted "[w]hen
the written agreement, as applied to the subject matter, is in
any respect uncertain or equivocal in meaning." *Id.* (quoting
*Robert Indus. Inc. v. Spence*, 291 N.E.2d 407, 409 (1973); *see
also Charles River Mortgage Co. v. Baptist Home*, 630 N.E.2d 304,
306 (Mass. App. Ct. 1994).  In this case, since the Agreements

12

are governed by Massachusetts law, extrinsic evidence may be admitted to clarify the parties' understanding of the contractual terms.

Under Virginia law, a three year statute of limitations applies to "actions upon any unwritten contract, express or implied."  Va. Code § 8.01-246.  ChoicePoint suggests that any contract requiring extrinsic evidence is an unwritten contract and therefore subject to Virginia's three-year statute of limitations.[2]  The Virginia Supreme Court has distinguished the test that delineates contracts which satisfy the statute of frauds from the test defining oral agreements for statute of limitations purposes.  It has "held that in order to satisfy the statute of limitations writing requirement, the contract 'must show on its face a complete and concluded agreement between the parties.  Nothing must be left open for future negotiation and agreement: otherwise, it cannot be enforced.'"  *Marley Mouldings v. Suyat*, 970 F. Supp. 496, 498 (W.D. Va. 1997)(quoting *Newport News. H. & O.P. Development Co. v. Newport News St. Ry. Co.*, 32 S.E. 789, 790 (Va. 1899)); *see also Cohen v. UN-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 803 (Bankr. E.D. Va.

---

[2] ChoicePoint cites no Virginia case law in support of their proposition that the Court's consideration of parol evidence requires the application of a three-year statute of limitations, other than an unpublished Fourth Circuit case in which the Court of Appeals explicitly declined to address whether Virginia's statute of limitations for oral contracts governs oral contract modifications.  *Baker v. BASF Corp.*, 1996 U.S. App. LEXIS 8750, 1996 WL 192076, n 2 (4th Cir. 1996).

1999).

Viewing the facts in the light most favorable to the
non-moving party, the contracts described in the Amended
Complaint are written agreements.  Although SouthBanc has pointed
to extrinsic evidence of the parties' understanding of the
Agreements, such evidence is permissible under Massachusetts law
and does not create an oral contract.  The undisputed facts at
this stage of the litigation are insufficient for the Court to
conclude that SouthBanc is attempting to recover for breach of an
unwritten contract only, such that its claim is subject to
Virginia's shorter statute of limitations.  *See Roberts v. S.
Steinberg Co.,* 2005 Mass. Super. LEXIS 334 (Mass. Super. Ct.
2005)(in a Motion for Summary Judgment, addressing "the
defendants' contention that plaintiff's .. breach of fiduciary
duty claim must fail as a matter of law on statute of limitations
grounds," and concluding that "the undisputed material facts do
not lead irrevocably to that conclusion at this stage of the
litigation" but that "the reliable proof of the parties' assorted
factual assertions deserve to be put to the test by presentation
to a trier of fact").  The appropriate time for the Court to
determine the purpose for which evidence is being entered is when
it is being entered.  Therefore, the Court will not rule on
whether SouthBanc is seeking to admit evidence to prove existence
of an oral contract or to explain the understood meaning of

14

contract terms until such time as the evidence is being entered.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings will be granted in part and denied in part.

An appropriate Order will issue.


July 14, 2008
Alexandria, Virginia

_____/s/_____
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE
